UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| SAMUEL ROOSEVELT HUFF, § § Plaintiff, § VS. § REFUGIO COUNTY SHERIFF'S § DEPARTMENT, *et al*, § § Defendants. § | CIVIL ACTION NO. 6:13-CV-00032 |

## MEMORANDUM AND ORDER

Plaintiff Samuel Huff brings this lawsuit against the Refugio County Sheriff's Department, Refugio County, and two of its corrections officers, Ernest Yanez and Cameron Payne. Huff alleges that he sustained serious injuries after Yanez and Payne attacked him, unprovoked, while he was being detained in a county holding cell. Huff asserts federal and state law claims against the Defendants, who in turn argue that Huff's claims should be dismissed for failure to state a claim, and further, that the doctrines of qualified and sovereign immunity bar this suit. For the reasons explained below, the Court will dismiss all of Huff's claims except for his federal constitutional claim against Yanez and Payne in their individual capacities.

## I.     Background[1]

Huff was arrested by the City of Refugio Police Department on March 18, 2011.  He was then placed in a holding cell, which was under the control of the Refugio County Sheriff's Department.  Docket Entry No. 20 ¶ 8.  Two corrections officers, Yanez and Payne, removed his handcuffs and requested that he take off his shoes.  Huff alleges that though he did not provoke the officers, and in fact complied with their request, Yanez and Payne repeatedly slammed him into the holding cell's cement floor and walls.  They then violently jerked his arm behind his back, which resulted in broken bones.  Docket Entry No. 20 ¶ 8.  After the incident, Huff alleges that the officers refused to provide Huff with medical attention for a significant period of time.  Docket Entry No. 20 ¶ 8.

Huff brings section 1983 claims against Yanez and Payne in their individual and official capacities for use of excessive force.  He also brings section 1983 claims against the Sheriff's Department and the County for maintaining a policy of using excessive force and for failing to provide employees with proper supervision and training.  Finally, he brings state law assault and battery claims against Yanez and Payne.

After Huff filed suit, the Defendants moved to dismiss Huff's claims. Docket Entry No. 17.  The Court allowed Huff to replead rather than ruling on the

---

[1] The background section is based on allegations in Plaintiff's First Amended Complaint, *see* Docket Entry No. 20, which the Court must assume to be true at this stage.

Defendants' first motion to dismiss. After Huff filed an amended complaint, *see* Docket Entry No. 20, the Defendants once again moved to dismiss. Docket Entry No. 23. In their renewed motion to dismiss, they assert immunity defenses and argue that Huff has otherwise failed to adequately plead his claims.

## II.     Rule 12 Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). The court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive a motion to dismiss, a claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    Claims Against the Individual Defendants

### 1.  The Federal Excessive Force Claim

Huff attempts to bring excessive force claims against Yanez and Payne in both their individual and official capacities. As a preliminary matter, "claims against an individual acting in his official capacity are properly dismissed as

redundant when the entity with which the individual is associated is also a defendant." *Gaalla v. Citizens Med. Ctr.*, 2012 WL 2870701, at *4 (S.D. Tex. July 10, 2012) (collecting cases). Because Refugio County is also a defendant in this lawsuit, Huff's claim against Yanez and Payne in their official capacities will be dismissed.

For the excessive force claim brought against Yanez and Payne in their individual capacities, Huff invokes the Fourth, Fifth, Eighth and Fourteenth Amendments. Defendants correctly point out that most of these provisions do not apply to a pretrial detainee such as Huff. The Fourth Amendment applies to force used during an arrest, *see Valencia v. Wiggins*, 981 F.2d 1440, 1443–44 (5th Cir. 1993) ("We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring . . . *after* the incidents of arrest are completed) (emphasis in original), and the Eighth applies to force used against those who are serving time for a conviction, *see Whitley v. Albers*, 475 U.S. 312, 327 (1986) (noting that the Eighth Amendment serves as "the primary source of substantive protection to convicted prisoners"). The Fourteenth Amendment's Due Process Clause provides the proper framework for considering claims involving excessive force against pretrial detainees. *Valencia*, 981 F.2d at 1443, 1445–46; *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished

prior to an adjudication of guilt in accordance with due process of law.")[2]

When the excessive force claim is considered under the proper rubric of the Fourteenth Amendment, Yanez and Payne raise an additional challenge: that the complaint "does not set forth any specific actions by Defendants Yanez and Payne." Docket Entry No. 23 ¶ 15. This argument relies on the "heightened pleading standard" in which "plaintiffs suing government officials in their individual capacities must allege specific conduct giving rise to a constitutional violation." *See Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Defendants claim Huff has not met this challenge because he has not specified which of the two jailers "violently and repeatedly slammed [] Plaintiff into the cement wall" and which one "jerked his arm behind his back." Docket Entry No. 20 ¶ 8.

Defendants take the principle requiring a plaintiff to identify individual conduct attributable to each public official too far. That rule typically results in dismissals when individual policymakers are named as defendants without any allegation about their specific role in formulating the challenged policy. *See, e.g., Stevens v. Hayes*, 2012 WL 2572790, at *13 (W.D. Tex. July 2, 2012) (dismissing a failure to train claim against federal policymakers because the plaintiffs provided "no facts concerning what the defendants' actions or lack of actions even were.");

---

[2] Huff's invocation of the Fifth Amendment fails because its Due Process Clause applies only to the federal government.

*Woods v. Director's Review Comm.*, 2012 WL 1098365, at *3 (S.D. Tex. Mar. 30, 2012) (dismissing a section 1983 claim against a correctional institutions director where the plaintiff introduced no evidence of "any overt act . . . or policy implemented" by the correctional director that resulted in a constitutional deprivation); *McGiffin v. Valdez*, 2008 WL 4372719, at *3 (S.D. Tex. Sept. 19, 2008) (dismissing a claim against a county official with no personal involvement in the alleged unconstitutional conditions of the plaintiff's jail cell).

Here we are not dealing with allegations against policymakers, but allegations that two individuals had direct involvement in applying excessive force. The allegation is that both were present in the cell when the force was applied. This is more than sufficient at the pleading stage, even under the heightened standard applied to public officials sued in their individual capacity. *See, e.g.*, *Shaw v. Hardberger*, 2007 WL 1174202, at *4–5 (W.D. Tex. Apr. 19, 2007) (denying two of the six defendant officers' qualified immunity claims where the two officers were alleged to be present at the altercation); *see also Bias v. Lundy*, 188 F. App'x. 248, 249–50 (5th Cir. 2006) (vacating the grant of qualified immunity as to two officers who were alleged to have attacked the plaintiff, but affirming as to four officers where the plaintiff presented no evidence of their involvement in the use of excessive force). Discovery can flesh out the remaining detail of which officer slammed Huff to the floor and which officer brought his

arm behind his back. *See Arnold v. Moore*, 980 F. Supp. 28, 37 (D.D.C. 1997) (denying a motion to dismiss where the plaintiff sued unnamed corrections officers for an alleged beating).

The Fourteenth Amendment excessive force claim brought against Yanez and Payne in their individual capacities—a claim that, if proven, demonstrates a violation of clearly established rights[3]—therefore survives the Rule 12 stage.

    2. *The State Law Claims*

Huff also brings state law assault and battery claims against Yanez and Payne. Texas law, however, treats such claims as being directed against Refugio County, the governmental entity that employs them, rather than against the government employees individually. The state, therefore, can shield itself from liability through the sovereign immunity doctrine. And because the County has not waived its sovereign immunity for intentional torts like assault and battery, Huff's state law claims must be dismissed.

The common law doctrine of sovereign immunity protects states and their political subdivisions from suits for money damages. *Reata Constr. Corp. v. City*

---

[3] *See, e.g., Valencia*, 981 F.2d at 1447 (noting "no difficulty" finding a constitutional violation had occurred when a jail official hit a detainee's head against jail bars and applied a chokehold); *Paige v. Sauseda*, 2011 WL 8184443, at *5 (N.D. Tex. July 7, 2011) (denying a claim of qualified immunity when prison officers punched and kicked the plaintiff while he was on the floor in hand restraints); *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006) (affirming the denial of qualified immunity when a correctional officer struck a prisoner several times in the head, back and shoulders, and tried to ratchet the prisoner's handcuffed arms up and over his head).

*of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citations omitted). The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities. Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Reata Constr. Corp.*, 197 S.W.3d at 373–74. But the Act specifically preserves immunity against intentional torts, such as assault and battery. Tex. Civ. Prac. & Rem. Code § 101.057(2) (immunity applies to claims "arising out of assault, battery . . . or any other intentional tort").

The Texas Tort Claims Act also has the effect of extending sovereign immunity to government employees. Subsection 101.106(f) of the Act states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Thus, for subsection 101.106(f) to apply to a suit against a government employee, two conditions must be met: (1) the conduct at issue must have been within the general scope of the defendant's employment; and (2) the suit could have been brought "under this chapter" against the governmental unit. *Id.* The Texas Supreme Court recently construed the second condition to cover any "claim [] in tort and not under another statute that

8 / 15

independently waives immunity." *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008) ("[W]e have never interpreted 'under this chapter' to only encompass tort claims for which the Tort Claims Act waives immunity.").

Given this broad construction, Huff's claims "could have been brought" against Refugio County under the Tort Claims Act even though the Act does not waive the County's immunity from such claims. *Franka*, 332 S.W.3d at 381. Furthermore, Yanez and Payne were both acting within the general scope of their employment when they were in Huff's cell. *See Herrera v. Aguilar*, 2013 WL 4784125, at *3 (W.D. Tex. Sept. 6, 2013) ("If the conduct is the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, and is actuated, at least in part, by a purpose to serve the employer[,] such action is within the scope even if the employee . . . uses forbidden means of accomplishing results.") (citations and internal quotations omitted). Thus, Yanez and Payne are entitled to dismissal of Huff's assault and battery claims.

## IV. Claims Against Governmental Entities

Huff claims that the Refugio County Sheriff's Department and Refugio County are liable for Huff's injuries because the County adopted a "turn a blind eye" policy to the use of excessive force and because the County failed to adequately train Yanez and Payne. These claims fail for the reasons discussed

below.

### 1. Refugio County Sheriff's Department

First, the Refugio County Sheriff's Department is not a legal entity separate from Refugio County, and therefore, it cannot be sued. "In order for a plaintiff to sue a city [or county] department, it must enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quotations omitted); *see also Jacobs v. Port Neches Police Dep't.*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) ("In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) to grant the servient agency with jural authority." (citation omitted)). Huff concedes that the Refugio County Sheriff's Department is not a legal entity separate from the County. Docket Entry No. 26 ¶ 10. Therefore, his claim against it will be dismissed.

### 2. Refugio County

While Refugio County has the capacity to be sued, Huff must still meet the standards required to establish municipal liability under section 1983. "[M]unicipal liability under Section 1983 requires proof of three elements: [1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "A local government entity may be sued if it is

alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quotations omitted). Municipals may also be liable "where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval." *Id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). "[I]t is nearly impossible to impute lax disciplinary policy to [a municipal government] without showing a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582.

### a. "Turn a Blind Eye" Policy

Though Huff generally contends that the County "turned a blind eye" to the use of excessive force by its employees, and that this constituted a County policy or custom, he fails to allege any facts to support this claim. He does not describe, for instance, a single other incident in which the County turned a blind eye to its officers using excessive force. This dearth of prior, similar incidents almost invariably results in dismissal. *Compare, e.g.*, *McCoy v. Lowndes Cnty., Miss.*, 2009 WL 2986324, at *7–8 (N.D. Miss. Sept. 15, 2009) (dismissing a policy of excessive force claim when the plaintiffs provided no evidence of any other claims of excessive force brought against county officials); *Allen v. Burnett*, 2013 WL

2151218, at *3 (N.D. Tex. May 17, 2013) (dismissing a municipal liability claim when the plaintiff only alleged one improper police action—which was committed against him—in arguing that the police department had adopted an unconstitutional policy or custom), *with Oporto v. City of El Paso*, 2010 WL 3503457, at *5 (W.D. Tex. Sept. 2, 2010) (denying a motion to dismiss a policy of excessive force claim when the plaintiff alleged thirty-two prior incidents of excessive deadly force); *Barr v. City of San Antonio*, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (denying a motion to dismiss a policy of excessive force claim where the plaintiff alleged four similar lawsuits naming the defendant, even though the plaintiff did not provide the court with a list of those cases). Huff argues that the County established a policy of excessive force by failing to reprimand Yanez and Payne after the incident. Docket Entry No. 20 ¶ 21. This argument might be effective to establish a *future* "turn a blind eye" policy, but it does not establish a custom or policy in existence at the time Huff was in the County's custody. *See Monell*, 436 U.S. at 690–91 (requiring that the constitutional deprivation have occurred pursuant to a governmental custom).

Unlike his claims against Yanez and Payne, his claim against the County contains no more than "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Without even "minimal factual allegations" identifying a Refugio County policy that caused the alleged excessive

force, the Court will dismiss Huff's section 1983 claim against the County. *See Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011).

### b. Failure to Train or Supervise

Huff also alleges that the County failed to properly train its officers. To succeed on that claim, Huff must show (1) that the County had inadequate training procedures; (2) that inadequate training caused the officers to injure him; and (3) that the municipal policymakers were deliberately indifferent when they adopted the training policy. *Pineda v. City of Houston*, 291 F.3d 325, 331–32 (5th Cir. 2002). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d 440, 446–47 (5th Cir. 2011) (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Id.* at 447 (internal quotation marks omitted).[4]

Huff's failure to train argument fails for the same reasons his "turn a blind eye" argument does: it restates the basic elements of a failure to train claim without providing any factual allegations of prior "excessive force" problems that would give the County a reason to think its training was deficient. His sole allegation is

---

[4] The Court notes that Huff's reliance on the "single incident exception" to this rule, which states that a single incident can show deliberate indifference, is unavailing. *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). That exception only applies when "the municipal actor is a final policymaker." *Id.* As a county policymaker was not directly involved in the alleged excessive force in this case, that doctrine does not help Huff.

that the County failed to instruct its officers that they could not slam non-resisting individuals into cement walls and floors and violently jerk an individual's arms behind his back. Docket Entry No. 20 ¶ 24. Failure to train claims, like excessive force "policy" claims, generally require that plaintiffs show a pattern of prior misbehavior by untrained employees. "[W]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Epps*, 659 F.3d at 447 (internal quotations omitted); *see also Valle*, 613 F.3d at 548 (finding no deliberate indifference in failure to train claim where the plaintiff did not allege any prior specific instances of excessive force or official awareness of prior excessive force); *Frahm v. Refugio Cnty., Tex.*, 2012 WL 1805329, at *5 (S.D. Tex. May 16, 2012) (dismissing a failure to train claim for failing "to identify a single individual in the County's custody beside Frahm who was allegedly denied proper medical treatment by an untrained employee"). Standing alone, without any allegations of similar violations by other untrained corrections officers, Huff's failure to train allegation is insufficient to withstand a Rule 12(b)(6) motion.

## V.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket Entry No. 23) is **DENIED IN PART** and

**GRANTED IN PART**.  Huff's section 1983 claim based on the Fourteenth Amendment against Ernest Yanez and Cameron Payne in their individual capacities will go forward.  Huff's section 1983 claims against Yanez and Payne in their official capacities, the Refugio County Sheriff's Department, and Refugio County, as well as his state law assault and battery claims against Yanez and Payne, are **DISMISSED**.

SIGNED this 9th day of October, 2013.

_____
Gregg Costa
United States District Judge